RECEIVED
IN LAKE CHARLES, LA.

JUL 25 2013

TONY R. MOORE, CLERK
BY_____
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| JAIME DAY AND MURRY DAY | : | DOCKET NO. 2:12-CV-02844 |
| VS. | : | JUDGE MINALDI |
| STATE OF LOUISIANA, et al. | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is a Motion to Dismiss Pursuant to Federal R. Civ. P. 12(b)(6) [Doc. 3], filed by the defendants, Cecelia Ann Landry and Ann Landry, LLC (collectively, "the Landry defendants"). The plaintiffs, Jaime and Murry Day, timely filed a response [Doc. 7]. As the motion is fully briefed, the undersigned finds that it is ripe for review. For the foregoing reasons, the defendants' motion is GRANTED.

## FACTUAL BACKGROUND

This case arises from the alleged mishandling of potentially exculpatory evidence during Child in Need of Care ("CNC") proceedings against the plaintiff, Jaime Day.[1] Jaime Day and Murry Day are the biological parents of two children, Jason Kolten Day and Dalton Kyler Day.[2] Additionally, Murry Day is the biological father of Gabriel Michael Hanks from a previous relationship.[3]

On February 19, 2010, Gabriel accused Jaime Day, his stepmother, of child abuse and

---

[1] *See generally* Pls.' Compl., [Doc. 1].

[2] *Id.* at ¶ 3.

[3] *Id.*

physical neglect.[4] On March 8, 2010 Jaime Day was arrested and charged with physical neglect and child abuse.[5] At the time, Gabriel was removed from the plaintiffs' custody and placed into foster care with Karla Semien.[6] The plaintiffs' two natural children, Jason and Dalton, were placed in a separate home.[7]

From August 23, 2010 to September 27, 2012, Jaime Day attended Family and Juvenile Court for the Fourteenth Judicial District of Louisiana in relation to the CNC proceedings for Jason and Dalton.[8] On March 25, 2011,[9] the trial court ordered the Department of Children and Family Services ("DCFS")[10] to produce full pretrial discovery documents.[11] Several months later, the court conducted a nine day trial, which ended with the judge taking the matter under advisement on October 18, 2011.[12] On November 4, 2011, the judge issued a judgment, finding that Kolten and Jason were "Children in Need of Care," and also "exclud[ing] all other causes for an injury suffered by [Jaime Day's] stepchild, Gabe, other than [Jaime] Day's own acts."[13] The court relied, in part, on the testimony and psychological report written by the defendant, Dr.

---

[4] *Id.* at ¶ 2.

[5] *Id.* at ¶ 3.

[6] *Id.* at ¶ 14.

[7] *Id.*

[8] *Id.* at ¶¶ 5, 8-9.

[9] The plaintiffs list this date as March 25, 2012, but it appears that, based on the timeline, this event occurred in March 2011.

[10] The Department of Children and Family Services ("DCFS") was previously "State of Louisiana Department of Social Services, Office of Community Services."

[11] Pls.' Compl. at ¶ 6.

[12] *Id.* at ¶ 7.

[13] *Id.* at ¶¶ 8-9.

2

Lawrence Dilks, PhD, in coming to its conclusions.[14] As a result of the finding, the court ordered the plaintiffs' children in continued foster care.[15]

During the same period, Jaime Day was also the defendant in criminal proceedings stemming from the physical neglect and child abuse of Gabriel.[16] The criminal proceedings addressed virtually the same allegations as the CNC proceedings.[17] On November 3, 2011, a day prior to the ruling in the CNC proceedings, the prosecution in the criminal proceeding provided Jaime Day with supplemental discovery responses.[18] The supplemental discovery responses included a complete copy of a foster care journal written by Karla Semien ("the Semien Journal"), who was Gabriel's foster mother from March 3, 2010 to October 2010.[19] The plaintiffs contend that the Semien Journal contains photographic and written accounts of Gabriel's "bizarre, self-injurious and manipulative behavior."[20] Further, the plaintiffs assert that the contents of the Semien Journal contradict the prosecution's allegations of child abuse and the witness testimony in the CNC proceedings.[21] The plaintiffs aver that Ms. Landry and Dr. Dilks failed in their professional responsibility because they did not address the Semien Journal in their

---

[14] *Id.* at ¶ 10.

[15] *Id.* The trail judge also found that that Jaime Day was properly diagnosed with Factitious Disorder and NOS (by Proxy).

[16] *See id.* at ¶¶ 11-12.

[17] *Id.* at ¶ 12.

[18] *Id.* at ¶ 11.

[19] *Id.* at ¶¶ 13-15. Although the state produced selections from the Semien Journal during their previous discovery request, the complete journal was not produced until November 3, 2010. Semien began to keep written accounts of Gabriel's behavior at the request of DCFS employees. She purportedly delivered a complete version of the Semien Journal to the DCFS, Dilks, Landry, and Daley (another listed defendant) before the Juvenile Court proceedings began.

[20] *Id.* at ¶ 19.

[21] *Id.* at ¶ 22.

testimony during the CNC proceedings, and that all of the defendants are liable for failing to disclose the damning portions of the Semien Journal until one day before the judge issued a judgment in the CNC proceedings.[22]

After discovering the full contents of the Semien Journal, Jaime Day timely moved for a new CNC trial in Juvenile Court, alleging, *inter alia*, that the Semien Journal contradicted Dr. Dilks' testimony and underlying thesis.[23] Specifically, the plaintiffs alleged that the Semien Journal does not describe or support Dr. Dilks' testimony regarding Gabriel's cognitive, behavioral, and social characteristics.[24] On July 26, 2012, the trial court held a hearing on Jaime Day's Motion for New Trial.[25] At that time, the judge vacated his prior ruling and placed Jaime Day's biological children with their maternal grandparents.[26]

In response to the defendants' actions in concealing the Semien Journal, the plaintiffs brought this action, alleging violations of their rights under the Fourth, Fifth, Ninth, and Fourteenth Amendments of the U.S. Constitution.[27] The plaintiffs also asserted state law negligence and intentional tort claims.[28] In the complaint, the plaintiffs allege that the defendants violated their rights to be free from (1) unreasonable search and seizure, (2) illegal arrest, (3) malicious prosecution, (4) deprivation of property without due process, and, finally,

---

[22] *Id.*

[23] *Id.* at ¶¶ 23-24.

[24] *Id.* at ¶ 23.

[25] *Id.* at ¶¶ 24-25.

[26] Defs.' Mot. to Dismiss, [Doc. 3-1] at pp. 2-3.

[27] *See* Pls.' Compl. at ¶ 98.

[28] *Id.*

(5) that the defendants violated their rights to care, custody, control and management of their children.[29]

The Landry defendants now move to dismiss the plaintiffs' claims against them, arguing that: (1) Ms. Landry is immune from suit based on the doctrine of qualified immunity; (2) the plaintiffs fail to state a colorable claim against the Landry defendants under the Fourth and Fourteenth Amendments of the United States Constitution; and, (3) the plaintiffs cannot establish *respondeat superior* liability against Ms. Landry's limited liability corporation, Ann Landry, LLC.

## MOTION TO DISMISS UNDER 12(b)(6) STANDARD

A motion filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure challenges the sufficiency of a plaintiff's allegations. FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 652, 678, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007)). "A claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged . . . Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 129 S.Ct. at 1950. Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Id.* Courts will not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007)

---

[29] *Id.*

(quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir.2005)); *see also Iqbal*, 556 U.S. at 664, 129 S.Ct. at 1940 ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.")

## LAW AND ANALYSIS

The Landry defendants' Motion to Dismiss addresses the qualified immunity defense as it pertains solely to the plaintiffs' "care, custody, control and management" claim against Ms. Landry.[30] Similarly, the plaintiffs' opposition brief argues the inapplicability of qualified immunity to their "care, custody, control and management" claim against her.[31] Accordingly, the court will address the plaintiffs' "care, custody, control and management" claim under the qualify immunity doctrine. The plaintiffs' remaining claims against the Landry defendants under the Fourth and Fourteenth Amendments will be analyzed under Rule 12(b)(6)'s general failure to state a claim framework.

### I. Qualified Immunity for Ms. Landry: Right to Care, Custody, Control and Management

The undersigned will first address whether Ms. Landry is entitled to qualified immunity on the plaintiff's "care, custody, and control" claim. To determine whether a defendant may successfully avail himself to the defense of qualified immunity with regard to individual capacity claims under Section 1983, the court undertakes a two-step analysis. First, the court must determine whether the plaintiff has alleged "the violation of a clearly established constitutional right." *Spann v. Rainey*, 987 F.2d 1110, 1114 (5th Cir.1993) (quoting *Siegert v. Gilley*, 500 U.S. 226, 231, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991)). Second, if such a violation is alleged, the court next considers "whether the allegedly violated constitutional rights were *clearly*

---

[30] *See* Defs.' Mot. to Dismiss at pp. 4-7.

[31] *See* Pls.' Opp. Mot. to Dismiss, [Doc. 7] at pp. 7-12.

6

*established at the time of the incident*; and, if so, whether the conduct of the defendants was objectively unreasonable in the light of that then clearly established law." *Hare v. City of Corinth,* 135 F.3d 320, 326 (5th Cir.1998) (internal citations omitted) (emphasis in original).

When evaluating whether a plaintiff has stated a constitutional violation, the courts look to currently applicable constitutional standards. *Spann,* 987 F.2d at 1114–15. However, the objective reasonableness of an official's conduct must be measured with reference to the law as it existed at the time of the conduct in question. *See Anderson v. Creighton,* 483 U.S. 635, 638 (1987) (finding that qualified immunity shields government officials, provided "their actions could reasonably have been thought consistent with the rights they are alleged to have violated.").

As a side note, the plaintiff appears to contest the Landry defendants' characterization of the court's standard of review of a qualified immunity claim at the motion to dismiss stage, including whether the same burden-shifting analysis present in qualified immunity motions for summary judgment is likewise applicable when addressing a motion to dismiss. The court notes that the Northern District of Texas has explicitly and succinctly delineated the standard of review for a qualified immunity defense at the motion to dismiss stage:

> To overcome qualified immunity at the pleading stage, a plaintiff's complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. Ordinarily, qualified immunity is irrelevant to the existence of a plaintiff's cause of action because it is a defense available to the official in question. *See Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). However, a motion to dismiss on grounds of immunity "effectively assert[s] immunity from discovery, from suit, and from liability." *Cf. Johnson v. Johnson,* 385 F.3d 503, 528 (5th Cir.2004) (making statement in context of a motion for judgment on the pleadings on grounds of qualified immunity). Even limited discovery is not proper until the Court first finds that the pleadings assert facts which, if true, are sufficient to overcome the immunity defense. *See Wicks v. Miss. State Employment Servs.,* 41 F.3d 991, 994–95 (5th Cir.1995) (addressing discovery in context of qualified immunity and holding that if the "complaint falls short of this standard, the

district court should rule on the motion to dismiss before any discovery is allowed"). The burden is on the plaintiff to disprove a defendant's qualified immunity defense. *Club Retro, L.L.C. v. Hilton,* 568 F.3d 181, 194 (5th Cir.2009); *McClendon,* 305 F.3d at 323. To satisfy that burden on a motion to dismiss, the plaintiff must allege facts which show that a defendant violated the plaintiff's constitutional rights and that the violation was objectively unreasonable. *Club Retro, L.L.C.,* 568 F.3d at 194; *Atteberry,* 430 F.3d at 253.

*White v. Callender,* 3:11-CV-2002-M, 2011 WL 6263256 (N.D. Tex. Nov. 16, 2011) *report and recommendation adopted,* 3:11-CV-2002-M, 2011 WL 6288030 (N.D. Tex. Dec. 14, 2011).

Turning to the specific constitutional rights at issue, state child care workers such as Ms. Landry are entitled to qualified immunity in the performance of discretionary, nonprosecutorial functions. *See Stem v. Ahearn,* 908 F.2d 1, 5 (5th Cir.1990), *cert. denied,* 498 U.S. 1069 (1991). "Qualified immunity shields only that conduct not violative of clearly established rights of which a reasonable person would have known." *Hodorowski v. Ray,* 844 F.2d 1210, 1212 (5th Cir. 1988). The Supreme Court has stated:

> [T]he right the official is alleged to have violated must have been 'clearly established' in a ... particularized ... sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ...; but it is to say that in light of preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039. In sum, Supreme Court jurisprudence requires that the court focus on the law existing at the time of the alleged violation to determine whether or not a clearly established constitutional right was violated. *See id.*

Turning to the plaintiffs' allegations, they claim that Ms. Landry and various other named defendants, together with their employers, were in possession of the Semien Journal before the CNC proceedings. Essentially, Ms. Landry (as well as others) conspired to conceal the contents of the Semien Journal from the plaintiffs for professional and financial motives, because they

8

knew that the Semien Journal contained exculpatory evidence.

Ms. Landry's success on her qualified immunity defense hinges, in large part, on how well the facts of this case fit with the seminal trilogy of cases, *Hodorowski v. Ray*, 844 F.2d 1210 (5th Cir.1988), *Doe v. State of Louisiana*, 2 F.3d 1412 (5th Cir.1993), and *Kiser v. Garrett*, 67 F.3d 1166 (5th Cir.1995), in which the Fifth Circuit consistently found that social workers are entitled to qualified immunity for actions taken during the course of investigating allegations of child abuse.

The first in the trilogy of cases, *Hodorowski v. Ray*, dealt with whether qualified immunity would apply to social workers who had temporarily removed children from their parents' home without a court order. *Hodorowski*, 844 F.2d at 1215. At the district court level, the court had denied two of the defendant social workers' motions to dismiss based on qualified immunity. *Id.* at 1212. The Fifth Circuit noted that, in denying the motion to dismiss, the district court had cited (as the plaintiffs do in the case at bar), two Supreme Court cases which showed a "clearly established . . . right of family integrity." *Id.* at 1217 (referencing *Santosky v. Kramer*, 455 U.S. 745, 747-48, 102 S.Ct. 1388, 1392, 71 L.Ed.2d 599 (1982) (holding that a state cannot "sever completely and irrevocably the rights of parents in their natural child" unless the state established by clear and convincing evidence that the child was "permanently neglected"); also referencing *Stanley v. Illinois*, 405 U.S. 645, 649, 92 S.Ct. 1208, 1211, 31 L.Ed.2d 551 (1972) (holding that due process required a hearing before the state could permanently terminate the parental rights of unmarried fathers.)). The Fifth Circuit found these cases distinguishable, however, noting that they dealt with a state's attempt to *permanently*, as opposed to *temporarily*, sever the parent-child relationship. *Id.* Concluding, the court found that the plaintiffs could not satisfy the "clearly established" prong of the qualified immunity test, as

the right to family integrity was too "nebulous" for the social worker defendants to have known that an attempt to obtain temporary custody of the children during an abuse investigation was a violation of a clearly established constitutional right. *Id.* at 1217.

The facts of this case closely mirror the facts in the second of the trilogy of cases, *Doe v. State of Louisiana.* In *Doe,* the plaintiff alleged that a case worker and her supervisor "manipulated the children to give false evidence ... created false evidence, withheld and ignored exculpatory evidence, and made misrepresentations to two judges and [a] district attorney." *Doe,* 2 F.3d at 1415. The plaintiff in *Doe* alleged that the social worker defendants interfered with the plaintiff's right to family integrity under the Fourteenth Amendment. *Id.* at 1415. The defendants filed a motion to dismiss in the district court based on qualified immunity. *Id.* at 1413. The district court denied the motion to dismiss, and the defendants filed an interlocutory appeal. *Id.*

The Fifth Circuit reluctantly overturned the district court and found that the defendants were entitled to qualified immunity. *See id.* at 1420. Like in *Hodorowski,* the *Doe* court explicitly distinguished the *Santosky* case, instead adopting as persuasive the reasoning in a factually similar First Circuit case, *Frazier v. Bailey,* 957 F.3d 920 (1st Cir. 1992). *Id.* at 1417. In *Frazier,* the First Circuit held that a social worker was entitled to qualified immunity, despite a plaintiff's allegations that the social worker interfered with the plaintiff's liberty interest by ignoring exculpatory evidence and programming the plaintiff's children to falsely accuse the plaintiff of sexual abuse. *Frazier,* 957 F.3d at 929. In coming to its conclusions that the social worker was entitled to qualified immunity as a matter of law, the *Frazier* court found that "the dimensions of [the] right to [family integrity] have yet to be clearly established." *Id.* at 931. Accordingly, in light of *Santosky, Hodorowski,* and *Frazier,* the *Doe* court held that although the

plaintiff had a substantive due process liberty interest in the care and custody of his children, the contours of that right were not sufficiently particularized at the time of the alleged unlawful conduct in order to consider the right clearly established. *Id.* at 1418.

Following *Doe,* the Fifth Circuit decided the final of the trilogy of social worker/qualified immunity cases, *Kiser v. Garrett.* In *Kiser,* the plaintiff alleged that a social worker defendant withheld exculpatory evidence and gave false testimony in state court during the children's adjudication proceedings. 67 F.3d at 1170–71. The court determined that it was bound by the rule established by the panel in *Doe*, and granted the defendants qualified immunity. *See id.* at 1173. Judge Barksdale noted in the opinion that "although a substantive due process right to family integrity has been recognized, the contours of that right are not well-defined, and continue to be nebulous, especially in the context of a state's taking custody of a child during an investigation of possible parental abuse." *Id.* Again, the Fifth Circuit refrained from explicitly defining the contours of the plaintiff's substantive due process right. *See id.*

In the instant case, the court must take the plaintiffs' allegations as true. Thus, the court must accept that Ms. Landry, along with the other defendants, was in possession of the Semien Journal during the children's CNC proceedings and knew that the Semien Journal contained exculpatory evidence. Before the CNC proceedings, Ms. Landry conspired with the other defendants to conceal the contents of the Semien Journal from the plaintiffs for professional and financial motives. As a result of the defendants' actions, the plaintiffs suffered emotional distress, harassment, unnecessary investigation, false public accusation, arrest, entrapment, and remained separated from their children from February 24, 2010 to July 26, 2012 (a period of 883 days).

Even taking all of the plaintiffs' allegations as true, because of the binding precedent in

*Hodorowski, Doe* and *Kiser,* this court cannot rule that the plaintiffs have shown that the law was sufficiently clear that a reasonable social worker such as Ms. Landry would have known that she violated the plaintiffs' constitutional rights by acting as she allegedly did in this case. While examining factually similar cases, district courts in this circuit have consistently held that misrepresenting or deliberately withholding evidence during a child services investigation does not defeat qualified immunity.[32] Thus, as the plaintiffs cannot meet their burden on the "clearly established" prong of the qualified immunity test, Ms. Landry is entitled to qualified immunity on this claim.

## II. Failure to State a Claim under the Fourth and Fourteenth Amendments for the Plaintiffs' Remaining Claims against the Landry Defendants

The undersigned will next turn to the plaintiffs' other claims, which the Landry defendants assert must be dismissed for failure to state a claim. As noted *supra,* in determining whether the plaintiffs have stated a claim sufficient to avoid dismissal under Rule 12(b)(6), the court accepts the well-pleaded facts alleged in their petition as true, and construes them in the light most favorable to the plaintiffs. *Arias–Benn v. State Farm Fire & Casualty Insurance Co.,* 495 F.3d 228, 230 (5th Cir.2007). Nevertheless, the court does "not accept as true conclusory allegations, unwarranted factual inferences or legal conclusions." *Central Laborer's Pension Fund v. Integrated Electrical Services, Inc.,* 497 F.3d 546, 550 (5th Cir.2007).

### A. Illegal Arrest

To prevail on their illegal arrest claim under the Fourth Amendment, the plaintiffs must sufficiently allege that the Landry defendants arrested Jaime and Murry Day without probable

---

[32] *See Foley v. Texas Dep't of Family & Protective Servs.*, 1:12-CV-270, 2012 WL 6803598 (E.D. Tex. Nov. 14, 2012) report and recommendation adopted, 1:12-CV-270, 2013 WL 84852 (E.D. Tex. Jan. 7, 2013) (finding that qualified immunity protects a child services case worker who withheld evidence that would have cast doubt on the parents' wrongdoings); *Young v. Office of Child Safety*, CIV.A. 11-1417-LC, 2012 WL 7017793 (W.D. La. Dec. 14, 2012) report and recommendation adopted, CIV.A. 11-1417-LC, 2013 WL 486407 (W.D. La. Feb. 5, 2013) (noting that a child services employee may be entitled to qualified immunity where she allegedly produced false statements and tampered with evidence; the court ultimately ruled in her favor on other grounds).

cause. *Rhodes v. Prince,* 360 Fed. App'x. 555, 558 (5th Cir. 2010) (citing *Haggerty v. Tex. S. Univ.,* 391 F.3d 653, 655–56 (5th Cir. 2004)). "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Deville v. Marcantel,* 567 F.3d 156, 164 (5th Cir.2009) (quoting *Resendiz v. Miller,* 203 F.3d 902, 903 (5th Cir.2000)).

Reviewing the face of the complaint, aside from making the legal conclusion that an illegal arrest took place, the plaintiffs make no allegations about lack of probable cause at the time of Jaime Day's arrest, nor do the plaintiffs assert any facts about any arrest that may establish the lack of probable cause. Even if the plaintiffs asserted the lack of probable cause, the plaintiffs may find it difficult to prove this element, considering that the exculpatory evidence was uncovered *after* the plaintiffs' arrest.

Further, even assuming *arguendo* that the plaintiffs had sufficiently pled the elements of an illegal arrest claim, there are no allegations which connect the Landry defendants to this action. Instead, the plaintiffs solely contend that the Landry defendants came into possession of evidence which materially disproved the original allegation upon which the defendants were arrested and prosecuted. Accordingly, this claim against the Landry defendants must be dismissed.

### B. Malicious Prosecution

Assuming *arguendo* that the Fifth Circuit would recognize a Fourth Amendment right to be free from malicious prosecution in this instance,[33] failure to satisfy the elements of a state law malicious prosecution claim may still result in dismissal of said claim. *See Moore v. Grant,* 79

---

[33] A theory which is doubtful, in light of case law stating that "[t]here is no federal constitutional claim based on the tort of malicious prosecution." *Jackson v. Mizzel,* 361 Fed. App'x. 622, 626 (5th Cir. 2010) (unpublished) (citing *Williams v. Dretke,* 306 Fed.Appx. 164, 166 (5th Cir.2009) (unpublished).

Fed. App'x. 676, 677 (5th Cir. 2003) (unpublished) (affirming dismissal of Fourth Amendment malicious prosecution claim because the plaintiff could not satisfy elements of state malicious prosecution claim). In general, in Louisiana, "termination of the civil proceedings which are contended to have been maliciously prosecuted is an essential element for a successful action for malicious prosecution." *Dubois v. State Through Dept. of Pub. Safety*, 466 So. 2d 1381, 1387–88 (citing *Jones v. Soileau*, 448 So.2d 1268 (La.1984)). In the instant case, the plaintiffs' own pleadings suggest that the "maliciously prosecuted" CNC proceeding is still pending after the judge vacated his previous ruling.[34] Further, the plaintiffs have failed to allege any facts which would establish that the criminal proceedings concluded in a termination favorable to the plaintiffs either, as it appears this proceeding is still pending. Thus, even construing the pleadings in the light most favorable to the plaintiffs, the plaintiffs have failed to assert an essential element of a malicious prosecution claim.

Further, the *Doe* court, *supra*, specifically addressed whether a malicious prosecution cause of action under § 1983 would be available against social workers who intentionally concealed exculpatory evidence in a civil proceeding. *Doe*, 2 F.3d at 1419. The *Doe* court held that, while it was "unclear" whether malicious prosecution could be an independent cause of action under § 1983 based on its facts, a malicious prosecution claim might be actionable "in some instances: 'litigiousness which gives rise to a common law tort action for misuse of legal procedure may be so egregious as to constitute a violation of § 1983 as well, if the tort-feasor, under color of state law, subjects the tort-victim to a deprivation of constitutional dimension.'" *Id.* (citing *Beker Phosphate Corp. v. Muirhead*, 581 F.2d 1187, 1189 (5th Cir. 1978)). The *Doe* court noted, however, that it could find only two cases in which malicious prosecution was

---

[34] *See* Pls.' Compl., [Doc. 1] at ¶¶ 24-25. The Juvenile Court vacated his previous ruling; however, there is no indication that the plaintiffs have been awarded custody of their children. The complaint indicates that the children were instead transferred to the custody of their maternal grandparents after the vacated ruling.

egregious enough to constitute a constitutional violation: (1) *Vinson v. Campbell Cnty Fiscal Ct.*, 820 F.2d 194 (6th Cir 1987), a case in which a mother brought suit against a juvenile services probation officer who removed her children from custody after finding that they were truant and (2) *Cale v. Johnson*, 861 F.2d 943 (6th Cir. 1988), a case in which a prison official planted drugs on a plaintiff for retaliatory purposes. *Id.* at 1420. Dodging the question of whether the *Doe* defendants' actions were similarly egregious, the *Doe* court simply opined that "[d]espite the holdings of those two cases, it can hardly be said that in light of the law in 1990 that the unlawfulness of [the social workers'] conduct was apparent. Consequently, 'there was no clearly established constitutional counterpart to an action for malicious prosecution.'" *Id.* at 1419.

In sum, whether analyzed under the traditional Rule 12(b)(6) failure to state a claim framework or under qualified immunity, the plaintiffs' malicious prosecution claim against the Landry defendants must fail.

### C. Unreasonable Search and Seizure of Property

Finally, the plaintiffs also allege that the defendants violated their rights to be free from unreasonable search and seizure of their property. It is well established that states must follow fair procedures before depriving someone of his life, liberty, or property. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656–57 (1950). Absent consent or warrant, "plain view" search and seizures can be justified only if they meet the probable cause standard. Thus, in order to state a claim for unreasonable search and seizure, the plaintiffs must allege facts that would prove the lack of "plain view" or probable cause. *See Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 65, 113 S.Ct. 538, 545 (1992).

In support of their "unreasonable search and seizure" claim, the plaintiffs only allege the various defendants, including the Landry defendants, seized the plaintiffs' children and

15

possessed material evidence which "conclusively established" the plaintiffs' custodial rights. The plaintiffs do not allege any facts to suggest that the Landry defendants and other various state actors did not follow proper procedure, or that their actions did not serve a legitimate government objective. Accordingly, the plaintiffs' unreasonable search and seizure claim against the Landry defendants must also be dismissed.

### III. Respondent Superior and Ann Landry, LLC's Liability

The plaintiffs also allege that Ann Landry, LLC is liable for the tortious conduct of Ms. Landry, an employee of Ann Landry, LLC. An action against an employer based on respondeat superior is a derivative claim arising solely from the conduct of the employee. However, the liability of the employer is extinguished when the employee is released from liability. *See Haith v. City of Shreveport*, CIV.A. 03-2128, 2005 WL 2140583, 6 (W.D. La. Sept. 1, 2005). As the court has found that the plaintiffs have failed to state a claim against Ms. Landry, the plaintiffs' claims against Ann Landry, LLC must similarly be dismissed.

### IV. State Law Claims

To the extent the plaintiffs invoke this Court's supplemental jurisdiction under 28 U.S.C. § 1367, the court finds that the plaintiffs' state law claims should be dismissed. The "general rule" in the Fifth Circuit "is to decline to exercise jurisdiction over pendent state law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial." *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir.1999) (citation omitted); *accord, Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine ... will point toward declining to exercise jurisdiction over the remaining

state-law claims."). This rule is "neither mandatory nor absolute," however. *Batiste*, 179 F.3d at 227. A court may decline to exercise supplemental jurisdiction when:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Reviewing the remaining state law claims against the Landry defendants, the court finds that the plaintiffs are asserting garden-variety state negligence and intentional/willful tort claims against under La. Civ. Code arts. 2315 and 2324, respectively, hardly "novel or complex issues of state law." Additionally, the state law claims appear to be secondary to the plaintiffs' federal claims, which the court has dismissed in their entirety against the Landry defendants. Accordingly, dismissal of the state law claims against the Landry defendants is also appropriate.

## CONCLUSION

In conclusion, for all of the reasons set forth above, the Landry defendants' Motion to Dismiss will be granted, and all of the plaintiffs' claims against the Landry defendants will be dismissed with prejudice.

Lake Charles, Louisiana, this 23 day of July 2013.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE